No. *2007R01282*

CR11 00422 LHK PSG



# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

*SEALED BY ORDER OF THE COURT*

2011 JUN 30  A 9: 03

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. OF CA. SAN JOSE

## THE UNITED STATES OF AMERICA

### *vs.*

### EDWARD G. KLUJ, and

### GURINDER KIREN MAND

---

# INDICTMENT

## SEE ATTACHMENT

---

*A true bill.*

*Mary Elizabeth Sladek*
**Foreperson**

Filed in open court this __29__ day of __JUE__

**A.D. 2011**

*PES. MJ*
UNITED STATES MAGISTRATE JUDGE

Bail. $ No bail arrest warrant (both defendants).



DOCUMENT NO.   CSA's INITIALS

1

DISTRICT COURT
CRIMINAL CASE PROCESSING

## ATTACHMENT TO INDICTMENT COVER

## U.S.

### v.

## EDWARD G. KLUJ, and
## GURINDER KIREN MAND,

**Count One**: 18 U.S.C. § 1349 - Conspiracy to Commit Health Care Fraud (Both)

**Counts Two through Forty-One**: 18 U.S.C. § 1347 - Health Care Fraud
(Count 2-8 Both, 9-41 -Kluj)

**Counts Forty-Two through Forty Three**: 18 U.S.C. § 1518 - Obstruction of Criminal
Investigation of HCF (Mand)

1  MELINDA HAAG (CSBN 132612)
   United States Attorney

2

3

FILED

2011 JUN 30  A 9: 03

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. CA. SAN JOSE

SEALED BY ORDER
OF THE COURT

LHK

8           UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11  UNITED STATES OF AMERICA,        )  No.  CR11  00422  PSG
                                     )
12        Plaintiff,                 )
                                     )  VIOLATIONS: 18 U.S.C. § 1349 –
13                                   )  Conspiracy to Commit Health Care Fraud;
          v.                         )  18 U.S.C. §§ 1347 and 2– Health Care
14                                   )  Fraud and Aiding and Abetting; 18 U.S.C. §
    EDWARD G. KLUJ, and              )  1518 - Obstruction of Criminal Investigation
15  GURINDER KIREN MAND,             )  of Health Care Offenses; 18 U.S.C. §
                                     )  982(a)(7) – Criminal Forfeiture of
16        Defendants.                )  Healthcare Fraud Proceeds
                                     )
17  _____ )  SAN JOSE VENUE

18                  I N D I C T M E N T

19  The Grand Jury charges:

20        At all times relevant to this Indictment:

21                  Introductory Allegations

22        1.  EZ Step, Inc. was a pharmacy and licensed durable medical equipment (DME)

23  supplier located at 1460 Tully Road, Suite 604, San Jose, California 95122.  EZ Step, Inc. billed

24  Medicare, Medi-Cal, and private insurance companies for prescription medication and DME

25  orders.

26        2.  EDWARD G. KLUJ owned and operated EZ Step, Inc., and was a registered

27  pharmacist.

28        3.  GURINDER KIREN MAND was an employee of EZ Step, Inc.

INDICTMENT                          1

The Health Care Benefit Programs

**The Medicare Program**

4. The Medicare Program ("Medicare") was a federally funded health insurance program that provided health care benefits primarily to individuals aged 65 or older and certain disabled persons.

5. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), an agency of the United States Department of Health and Human Services (HHS). Medicare insurance benefits were paid out of a trust fund consisting of appropriations from the United States Treasury and premiums paid by those persons who chose to enroll.

6. CMS was responsible for the administration of the Medicare program nationally. CMS contracted with private insurance companies or "carriers" to process and pay Medicare claims regionally.

7. Eligible individuals who received benefits under Medicare were issued unique Medicare identification numbers or beneficiary numbers, and were commonly referred to as beneficiaries.

8. Health care professionals, including pharmacies and DME retailers, who enrolled with Medicare to receive reimbursement for providing medications, medical benefits, items and services to beneficiaries, were referred to as Medicare providers. To become a Medicare provider, a health care professional completed and submitted a provider enrollment application certifying that it was familiar with and would comply with all Medicare laws, rules and regulations. Medicare then assigned the provider a unique billing number to be used when seeking reimbursement from – or billing – Medicare.

9. Along with issuing a unique billing number, Medicare and its agents and contractors, issued and/or published on its Internet websites, provider manuals, bulletins and updates, which explained Medicare's laws, rules and regulations.

10. Medicare primarily relied on patient files to determine whether medical services were provided and procedures performed, and whether they were reasonable and necessary. Medicare generally required providers to keep and maintain patient files with true and accurate information

INDICTMENT                                 2

1  for at least five years.  Medicare had the regulatory authority to conduct audits and request

2  records from its providers at any time.

3  **Medicare Part B**

4      11.  Different types of benefits covered by Medicare were separated into different

5  program parts.  Part B of the Medicare program was a medical insurance program that paid up to

6  80% of the allowable charges of certain physician services, outpatient services, and other health

7  care benefits, items and services, including DME, related prescription medications, other health

8  care benefits, items and services that were medically necessary and ordered by licensed medical

9  doctors or other qualified health care providers.  DME was equipment designed for repeated use

10  and for a medical purpose, including wheelchairs, orthopedic shoes, commodes and inhalers.

11      12.  Payments under Medicare Part B were often made directly to the health care provider

12  or its billing contractor rather than to the beneficiary.  The beneficiary would assign the right of

13  payment to the health care provider.  The health care provider then assumed the responsibility for

14  submitting claims to and receiving payments from Medicare.

15  **Medicare Part D**

16      13.  Part D of the Medicare program established an optional prescription drug benefit for

17  Medicare beneficiaries in the United States.  Medicare beneficiaries could obtain Part D benefits

18  by joining the Medicare private Prescription Drug Plan (PDP), where private insurance

19  companies provided the coverage for prescription drugs only, or they could join the Medicare

20  Advantage Plan which covered both prescription drugs and medical services.  The private

21  insurance plans were reimbursed by Medicare through CMS.

22      14.  A private insurance company offering a Medicare Part D Plan was a Medicare Part D

23  Sponsor (Sponsor).  Sponsors included private insurance carriers such as Humana, HealthNet,

24  Blue Cross, Blue Shield, and United Health Group, among others.  These Sponsors offered

25  different PDPs, and received, processed and paid all claims for reimbursement for Medicare

26  providers in California.

27      15.  Medicare beneficiaries who joined a Medicare PDP were issued separate member

28  identification numbers and PDP cards.  Part D beneficiaries presented their PDP cards to a

INDICTMENT               3

pharmaceutical provider at the time of service and were later billed a fee or co-payment.
Medicare subsidized a portion of the bill and the Sponsor paid the remaining costs when billed
by the pharmaceutical provider for reimbursement for services rendered.  The pharmaceutical
provider submitted the prescription claim for reimbursement to the Sponsor for payment under
the beneficiary's Health Insurance Claim Number (HICN) and/or Medicare Plan identification
number.

**The Medi-Cal Program**

16.  The Medi-Cal Program (Medi-Cal) was a public assistance program – often referred
to as Medicaid in other states – that paid the cost of essential medical care for low-income
individuals in California.  Medi-Cal was funded with approximately 50% federal funds (from
HHS) and 50% state funds.  The California Department of Health Services acted as an agent for
the United States in the disbursement of the funds which the federal government placed in Medi-
Cal.

17.  Eligible individuals who received benefits under Medi-Cal were issued unique Medi-
Cal identification numbers or beneficiary numbers.

18.  Health care providers, including pharmacies and DME retailers, who enrolled with
Medi-Cal to provide medical services were Medi-Cal providers.  Medi-Cal providers were
required to comply with Medi-Cal's rules and regulations.  Medi-Cal providers were required to
keep records that fully disclosed the type and extent of services and merchandise provided to
Medi-Cal beneficiaries, including records of prescriptions, for a period of three years.

19.  After providing services to a Medi-Cal beneficiary, providers submitted claims for
payment to the state's fiscal intermediary, a private company under contract with the California
Department of Health Services to process Medi-Cal claims.  Since 1988, the fiscal intermediary
has been Electronic Data Systems Corporation (EDS) in Sacramento, California.

20.  Medi-Cal generally paid claims upon receipt, without requiring the claim to be
accompanied by documentary proof that the services or merchandise were actually provided or
were medically necessary, or that prescriptions had ever been issued for the drugs dispensed.

21.  Medicare, Medi-Cal, and private insurance companies each qualified as a "health

INDICTMENT                                     4

care benefit program," as defined by Title 18, United States Code, Section 24(b), in that they were public or private plans, affecting commerce, under which medical benefits, items, and services were provided to individuals.

**Billing Codes and Procedures**

22.  To receive payment under a health care benefit program, a health care provider, such as a pharmacy or DME retailer, would submit a health insurance claim form electronically or by submitting a claim form, using its unique billing number (referred to as a provider number for prescription medications, or supplier number for DME and related medications, health care benefits, items and services). The claim form required health care providers to provide certain important information, including: (a) the beneficiary's name and identification number; (b) the identification number of the doctor or other qualified health care provider who ordered the prescription medication, DME or related prescription medication,  health care benefit, item or service that was the subject of the claim; (c) the prescription medication, DME or related prescription medication, health care benefit, item or service that was provided or supplied to the beneficiary; (d) the billing codes for the prescription medication, DME or related prescription medication, benefit, item, or service, and (e) the date upon which the prescription medication, or DME or related prescription medication, benefit, item, or service was provided or supplied to the beneficiary.

23.  Many health care providers employed billers and/or medical coders to convert information from patient files to codes, enter those codes onto claim forms, and then submit those claim forms electronically or by hard copy to health care benefit programs for reimbursement of the claims. These billers typically used billing software approved by the health care benefit program (i.e., Medicare or Medi-Cal) where the claims were transmitted to the insurance carrier via the internet. The health care benefit programs sent a reimbursement check to the provider, or initiated an electronic transfer of funds to the provider's biller or directly to the provider's bank.

24. Part D Sponsors typically contracted with a third party biller – a Pharmacy Benefit Manager (PBM) – to handle claims.  Claims were submitted electronically by the pharmaceutical

INDICTMENT                                             5

1    provider or its PBM.  The claims were received and paid by the Sponsor directly or by the

2    Sponsor's PBM.

3        25.  Medicare and private insurance companies mailed a claims summary to the

4    beneficiary, which identified how much the health care benefit programs paid on the

5    beneficiary's behalf.

6                        The Scheme and Artifice to Defraud

7        26.  Beginning on a date uncertain, but no later than in 2005, and continuing through

8    approximately 2007, in the Northern District of California and elsewhere, KLUJ, MAND, and

9    others, devised and intended to devise a scheme and artifice to defraud health care benefit

10   programs, including Medicare, Medi-Cal and privately sponsored health insurance programs, in

11   connection with the payment for health care benefit services by knowingly submitting and

12   causing to be submitted false, fraudulent and fictitious health care claims.

13                Manner and Means of the Scheme and Artifice to Defraud

14       27.  It was part of the scheme and artifice to defraud that KLUJ, MAND, and others,

15   known and unknown to the grand jury, regularly submitted, or caused to be submitted, false and

16   fraudulent claims to health care benefit programs that falsely represented that EZ Step, Inc. had

17   provided pharmaceutical items and services to beneficiaries pursuant to orders and prescriptions

18   by physicians or other health care providers.

19       28.  It was further part of the scheme to defraud that false claims were typically billed

20   under the insurance plans of elderly health care program beneficiaries, EZ Step, Inc. employees

21   and their family members, and other EZ Step, Inc. customers.

22       29.  It was further part of the scheme and artifice to defraud that KLUJ, MAND, and

23   others, submitted, or caused to be submitted, false and fraudulent claims to health care benefit

24   programs for medications by:

25       (a)    seeking reimbursement for claims without prescriptions;

26       (b)    fabricating prescriptions and forging signatures of physicians on prescriptions;

27       (c)    inflating dosage and quantity amounts of medications ordered by physicians or

28              other health care providers, and inflated numbers of authorized refills of

INDICTMENT                          6

prescribed medications;

(d)     adding unauthorized medications to prescriptions for authorized medications;

(e)     using the billing numbers of beneficiaries to whom prescriptions were not issued in order to seek reimbursement under their insurance plans;

(f)     seeking reimbursement for brand names of the less expensive generic names of medications prescribed by physicians or other health care providers;

(g)     seeking reimbursement for unauthorized prescriptions for medications that were covered under the plans of beneficiaries instead of the authorized prescriptions for medications which were not covered; and

(h)     delivering to beneficiaries only partial amounts of the medications prescribed and billed to their plans, or failing to deliver the billed medications at all, and forging their signatures on EZ Step, Inc. delivery forms to indicate that the beneficiaries had received the medications prescribed and billed in their names.

30.  It was further part of the scheme and artifice to defraud that KLUJ, MAND, and others, submitted, or caused to be submitted, false and fraudulent claims to health care benefit programs seeking reimbursement for the cost of DME and related prescription medications, benefits, items, and services that were denied, not authorized by physicians, nor provided to beneficiaries as claimed by:

(a)     fabricating DME authorizations, Certificates of Medical Necessity, and related documents, and forging the signatures of physicians and other authorized health care providers of beneficiaries on these documents;

(b)     adding DME and related prescription medications, benefits, items, and services to orders of physicians or other authorized health care providers;

(c)     seeking reimbursement for DME and related prescription medications, benefits, items, and services eligible for greater insurance reimbursement than those actually authorized by physicians or authorized health care providers;

(d)     substituting DME and related prescription medications, benefits, items, and services covered by the insurance plans of beneficiaries for the non-covered DME

INDICTMENT                            7

and related prescription medications, benefits, items, and services which had been authorized by physicians or other health care provider; and

(e)     not delivering DME and related prescription medications, benefits, items, and services which they billed in the names of beneficiaries, and forging the signatures of the beneficiaries on EZ Step delivery forms to indicate that EZ Step, Inc. had delivered the DME and related prescription medications, benefits, items, and services to them; and

(f)     delivering DME and related prescription medications, benefits, items, and services at a lesser insurance reimbursement rate than items which had been ordered by the physicians or authorized health care providers and billed to the health care programs.

31.  It was further part of the scheme and artifice to defraud that KLUJ, MAND, and others, failed to maintain proper records, and altered or destroyed records in order to avoid detection by medical auditors and investigators, and caused records to be altered, destroyed and not to be maintained by:

(a)     excessively stamping documents purporting to be valid prescriptions and DME authorizations with dates and initials so as to make the documents illegible;

(b)     forging signatures of physicians and patients on prescription and DME authorization forms; and

(c)     having incomplete patient records of prescriptions or DME authorizations and related documents in patient files.

32.  It was further part of their scheme and artifice to commit health care fraud, and to evade detection of health care fraud by medical auditors and investigators, that KLUJ and others engaged in threats and intimidation of employees by:

(a)     accusing EZ Step, Inc. employees of stealing medications or DME and related items from EZ Step, Inc.;

(b)     brandishing weapons, such as firearms and a knife, on the premises of EZ Step, Inc. in the presence of employees, and leaving bullets in the work spaces of

INDICTMENT                                    8

employees;

(c)     coercing employees to engage in false billing to prevent the employees from reporting the false billing at EZ Step, Inc., because disclosure would reveal their own participation; and

(d)     warning employees not to report the false billing to regulatory and law enforcement authorities.

**COUNT ONE:** (18 U.S.C. § 1349 - Conspiracy to Commit Health Care Fraud)

33.  The factual allegations contained in Paragraphs 1 through 32 of this Indictment are re-alleged and incorporated as if fully set forth here.

34.  Beginning on a date unknown, but no later than in or about 2005, and continuing through in or about 2007, in the Northern District of California and elsewhere, the defendants,

EDWARD G. KLUJ,
and
GURINDER KIREN MAND,

and others, knowingly and willfully conspired to devise and did devise a scheme and artifice (A) to defraud as to a material matter a health care benefit program, affecting commerce, as defined in Title 18, United States Code, Section 24(b), and (B) to obtain any of the money and property owned by, and under the custody and control of, said health care benefit program, by means of materially false and fraudulent pretenses, representations, and promises, and material omissions, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS TWO THROUGH ~~EIGHT~~ SEVEN:** (18 U.S.C. §§ 1347 and 2 - Health Care Fraud and Aiding and Abetting)

35.  Paragraphs 1 through 32 of this Indictment are re-alleged and incorporated as if fully set forth here.

36. On or about the dates set forth below, in the Northern District of California and elsewhere, the defendants,

INDICTMENT                                        9

EDWARD G. KLUJ,
and
GURINDER KIREN MAND,

and others, did knowingly and willfully execute, and attempt to execute, a scheme and artifice

(A) to defraud as to a material matter a health care benefit program, affecting commerce, as

defined in Title 18, United States Code, Section 24(b), and (B) to obtain any of the money and

property owned by, and under the custody and control of, said health care benefit program, by

means of materially false and fraudulent pretenses, representations, and promises, and material

omissions, in connection with the delivery of and payment for health care benefits, items, and

services, as follows:

| Count | Date of Payment | Beneficiary | Health Care Program and Claim Number | Item Claimed; Approx. Amount Paid by Health Care Program |
|-------|-----------------|-------------|--------------------------------------|----------------------------------------------------------|
| 2 | 8/10/06 | D.M.-1 | Medicare (Part D) 66209860251 | Abilify 20 mg $1,280.61 |
| 3 | 7/13/06 | D.M.-1 | Medicare (Part B) 61928013910 | Power Wheelchair $4,036.80 |
| 4 | 8/11/06 | D.M-2 | Blue Cross 1085695173 | Tarceva 150 mg tablet $2,794.98 |
| 5 | 8/25/06 | D.M.-2 | Blue Cross 1086023514 | Cellcept 250 mg Capsule $253.37 |
| 6 | 8/25/06 | D.M.-2 | Blue Cross 1086413170 | Abilify 30 mg tablet $894.70 |
| 7 | 8/20/06 | R.B.-1 | Medicare (Part D) 62097703828015 | Zyprexa 20 mg tablet $1,786.23 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

**COUNTS ~~NINE~~ EIGHT THROUGH FORTY-~~TWO~~ ONE**: (18 U.S.C. §§ 1347 and 2 - Health Care Fraud and Aiding and Abetting)

37.  Paragraphs 1 through 32 of this Indictment are re-alleged and incorporated as if fully set forth here

38.  On or about the dates set forth below, in the Northern District of California and

INDICTMENT                                    10

elsewhere, the defendant,

EDWARD G. KLUJ,

and others, did knowingly and willfully execute, and attempt to execute, a scheme and artifice (A) to defraud as to a material matter a health care benefit program, affecting commerce, as defined in Title 18, United States Code, Section 24(b), and (B) to obtain any of the money and property owned by, and under the custody and control of, said health care benefit program, by means of materially false and fraudulent pretenses, representations, and promises, and material omissions, in connection with the delivery of and payment for health care benefits, items, and services, as follows:

| Count | Date of Payment | Beneficiary | Health Care Program and Claim Number | Item Claimed; Approx. Amount Paid By Health Care Program |
|---|---|---|---|---|
| 8 | 1/20/07 | D.M.-1 | Medicare (Part D) 74173376661 | Tricor $266.53 |
| 9 | 4/10/07 | L.S. | Medicare (Part D) 274992494291 | Claravis 20 mg tablet $365.79 |
| 10 | 6/10/07 | L.S. | Medicare (Part D) 075543805111 | Zyvox 600 mg tablet; $3,852.97 |
| 11 | 8/20/07 | L.S. | Medicare (Part D) 076286703871 | Ziagen 300 mg tablet; $1,913.67 |
| 12 | 8/10/07 | M.F. | Medicare (Part D) 076170100351 | Norvasc 10 mg tablet; $201.05 |
| 13 | 10/10/07 | M.F. | Medicare (Part D) 076777940171 | Norvasc 10 mg tablet; $201.05 |
| 14 | 1/10/07 | L.N. | Medicare (Part D) 274023050501 | Detrol LA 2 mg capsule SA; $248.47 |
| 15 | 1/10/07 | L.N. | Medicare (Part D) 274027532971 | Flomax 0.4 mg capsule SA; $142.83 |
| 16 | 6/30/07 | L.N. | Medicare (Part D) 075747365851 | Amox Tr-K Clv 875-125 mg tablet; $89.66 |

INDICTMENT                                          11

| Count | Date of Payment | Beneficiary | Health Care Program and Claim Number | Item Claimed; Approx. Amount Paid By Health Care Program |
|---|---|---|---|---|
| 17 | 8/24/07 | A.N. | Blue Cross 1290019799 | Neupogen 300 mcg/ml vial; $2,023.59 |
| 18 | 6/4/07 | A.N. | Blue Cross 1245659722 | Pangestyme CN 20.66.42075 capsule DR; $87.26 |
| 19 | 4/7/07 | A.N. | Blue Cross 1223756933 | Lamictal 25 mg tablet; $199.20 |
| 20 | 3/5/07 | N.L. | Medi-Cal 6418371764 | Prograf 5 mg capsule; $5,147.03 |
| 22 | 3/5/07 | N.L. | Medi-Cal 6418392446 | Cellcept 500 mg tablet; $3,084.07 |
| 22 | 6/1/07 | N.L. | Medi-Cal 1243617988 | Valcyte 450 mg tablet; $2,019.60 |
| 23 | 5/4/07 | N.L. | Medi-Cal 1221801654 | Demeclocycline HCL 300 mg tablet; $1,522.33 |
| 24 | 3/3/07 | S.L. | Medi-Cal 6219053050 | Cellcept 500 mg tablet; $3,084.07 |
| 25 | 3/3/07 | S.L. | Medi-Cal 6219053050 | Prograf 5 mg capsule; $5,147.03 |
| 26 | 4/20/07 | S.L. | Medi-Cal 1202574790 | Valcyte 450 mg tablet; $3,845.51 |
| 27 | 4/20/07 | S.L. | Medi-Cal 1202269628 | Targretin 1% gel; $3,010.38 |
| 28 | 9/11/07 | R.B.-1 | Medicare (Part D) 72348349030013 | Targretin gel 1%; $1,505.60 |
| 29 | 9/11/07 | R.B.-1 | Medicare (Part D) 72346792031024 | Trizivir tablet; $1,785.52 |
| 30 | 10/26/07 | D.H. | Blue Cross 1313406241 | Levaquin tablet 750 mg; $100.69 |

INDICTMENT                                      12

| Count | Date of Payment | Beneficiary | Health Care Program and Claim Number | Item Claimed; Approx. Amount Paid By Health Care Program |
|-------|-----------------|-------------|--------------------------------------|----------------------------------------------------------|
| 31 | 10/26/07 | D.H. | Blue Cross 1313514963 | Targretin capsule 75 mg; $1,353.57 |
| 32 | 8/17/07 | D.H. | Blue Cross 1271346777 | Valcyte tablet 450 mg; $2,043.87 |
| 33 | 5/12/07 | D.B. | Medicare (Part B) 107134800174000 | Levalbuteral; $340.08 |
| 34 | 6/4/07 | D.B. | Medicare (Part D) 7128032750213 | Tarceva tablet 150 mg; $2,239.74 |
| 35 | 7/20/07 | D.B. | Medicare (Part D) 71778263931027 | Panretin gel 0.1%; $2,154.50 |
| 36 | 4/27/07 | R.B.-2 | Medicare (Part D) 70935648226012 | NovoLog Mix  PenFill; $653.39 |
| 37 | 1/27/07 | R.B.-2 | Medicare (Part D) 70071452723036 | NovoLog Mix PenFill; $657.27 |
| 38 | 1/27/07 | R.B.-2 | Medicare (Part D) 70071428411003 | Viread; $420.04 |
| 39 | 10/12/07 | J.G. | Medicare (Part D) 72605849022052 | Hepsera tablet 10 mg; $1,266.35 |
| 40 | 10/12/07 | J.G. | Medicare (Part D) 72647943380001 | Targretin capsule 75 mg; $2,738.72 |
| 41 | 6/20/07 | J.G. | Medicare (Part D) 71495269422006 | Xopenex HFA AER; $85.58 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

**COUNT FORTY-TWO**: (18 U.S.C. § 1518 - Obstruction of Criminal Investigation of Health Care Offenses)

39.  Paragraphs 1 through 32 of this Indictment are re-alleged and incorporated as if fully set forth here.

40.  In or about December 2007, in the Northern District of California and elsewhere, the

INDICTMENT                              13

1 │ defendant,

2 │ GURINDER KIREN MAND,

3 │ did attempt to willfully prevent, obstruct, mislead, and delay the communication of information

4 │ relating to a violation of a Federal health care offense to a criminal investigator, to wit, by

5 │ instructing Jane Doe 1, a former EZ Step, Inc. employee, to deny knowledge about the

6 │ commission of health care fraud at EZ Step, Inc., in violation of Title 18, United States Code,

7 │ Section 1518.

8 │ **COUNT FORTY-THREE**: (18 U.S.C. § 1518 - Obstruction of Criminal Investigation of Health
Care Offenses)

9 │

10 │      41.  Paragraphs 1 through 32 of this Indictment are re-alleged and incorporated as if fully

11 │ set forth here.

12 │      42.  In or about November 2008, in the Northern District of California and elsewhere, the

13 │ defendant,

14 │ GURINDER KIREN MAND,

15 │ did attempt to willfully prevent, obstruct, mislead, and delay the communication of information

16 │ relating to a violation of a Federal health care offense to a criminal investigator, to wit, by

17 │ instructing Jane Doe 2, a former EZ Step, Inc. employee, to deny knowledge about the

18 │ commission of health care fraud at EZ Step, Inc., in violation of Title 18, United States Code,

19 │ Section 1518.

20 │ **FORFEITURE ALLEGATION**: (18 U.S.C. § 982(a)(7) - Forfeiture of Healthcare Offense
Proceeds)

21 │

22 │      43.  Paragraphs 1 through 32 and Counts One through Forty-One of this Indictment are

23 │ hereby re-alleged and by this reference fully incorporated here for the purpose of alleging

24 │ forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

25 │      44.  Upon conviction of the offenses alleged in Counts One through Forty-One above, the

26 │ defendants, EDWARD G. KLUJ and GURINDER KIREN MAND, shall forfeit to the United

27 │ States any property constituting, or derived from, proceeds the defendants obtained directly or

28 │ indirectly as a result of said violations, pursuant to Title 18, United States Code, Section

INDICTMENT                                    14

982(a)(7), including but not limited to the following:

        a.    Money Judgment: a sum of money equal to the total gross proceeds obtained as a result of the offenses;

        b.    Real Property: real property and improvements, including those located at 4169 Knightsen Avenue, Knightsen, California 94548, A.P.N.: 032-020-013.

    45.  If as a result of any act or omission of the defendants, any of said property

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the Court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property that cannot be divided without difficulty;

any and all interest that the defendants have in any other property, up to the value of the property described in paragraph 41above, shall be forfeited to the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED:                         A TRUE BILL.

                               Mary Elizabeth Sladek
                               FOREPERSON

MELINDA HAAG
United States Attorney

_for Miranda Kane_

MIRANDA KANE
Chief, Criminal Division

(Approved as to form: E. Choi )
                 AUSA E. Choi

INDICTMENT               15

AO 257 (Rev. 6/78)

| **DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT** |
|---|

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

───── **OFFENSE CHARGED** ─────

SEE ATTACHMENT

☐ Petty
☐ Minor
☐ Misde-
  meanor
☒ Felony

PENALTY:   SEE ATTACHMENT

*SEALED BY ORDER OF THE COURT*

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

2011 JUN 30   SAN JOSE DIVISION  A  11: 03

───── **DEFENDANT - U.S** ─────

RICHARD W. WIEKING

► EDWARD G. KUDI, U.S. DISTRICT COURT

CLERK, U.S. DISTRICT COURT
N.D. CA.   S. JOSE

**DISTRICT COURT NUMBER**

CR 11   00422   PSG

**LHK**

───── **PROCEEDING** ─────

Name of Complainant Agency, or Person (& Title, if any)

FBI

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:

☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW
DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant

MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

Name and Office of Person
Furnishing Information on this form          Melinda Haag

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)          AUSA EUMI L. CHOI

─────────── **DEFENDANT** ───────────

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ►

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction            ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer    ☐ Yes    If "Yes"
been filed?     ☐ No     give date
                         filed

**DATE OF
ARREST**                 Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED
TO U.S. CUSTODY** ►       Month/Day/Year

☐ This report amends AO 257 previously submitted

─────── **ADDITIONAL INFORMATION OR COMMENTS** ───────

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT          Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

*\* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment*

Date/Time:                    Before Judge:

Comments:

## ATTACHMENT TO PENALTY SHEETS
## U.S.

### v.

### EDWARD G. KLUJ, and
### GURINDER KIREN MAND,


**Count One**: 18 U.S.C. § 1349 - Conspiracy to Commit Health Care Fraud (Both)

    <u>Penalties</u>:      Up to ten years imprisonment;
                                $250, 000 fine (or twice the gain/loss);
                                At least two years but not more then three years supervised release;
                                $100 Special Assessment


**Counts Two through Forty-One**: 18 U.S.C. § 1347 - Health Care Fraud
                                (Counts 2-8 Both, Counts 9-41 -Kluj)

    <u>Penalties</u>:      Up to ten years imprisonment;
                                  $250, 000 fine (or twice the gain/loss);
                                  At least two years but not more then three years supervised release;
                                  $100 Special Assessment


**Counts Forty-Two through Forty Three**: 18 U.S.C. § 1518 - Obstruction of Criminal
                                  Investigation of HCF (Mand)

    <u>Penalties</u>:      Up to five years imprisonment;
                                  $250, 000 fine (or twice the gain/loss);
                                  At least two years but not more then three years supervised release;
                                  $100 Special Assessment

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

FILED

2011 JUN 30  A 9:03

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NO. DIST. OF CA, S.J.

### OFFENSE CHARGED

SEE ATTACHMENT

☐ Petty
☐ Minor
☐ Misde-
   meanor
☒ Felony

PENALTY:   SEE ATTACHMENT

SEALED BY ORDER
OF THE COURT

### DEFENDANT - U.S.

▶ GURINDER KIREN MAND

DISTRICT COURT NUMBER

CR11   00422   PSG   LHK

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

FBI

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW
DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant

MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

Name and Office of Person
Furnishing Information on this form     Melinda Haag

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)     AUSA EUMI L. CHOI

### DEFENDANT

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction                    ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes    If "Yes"
been filed?  ☐ No      give date
                       filed

DATE OF
ARREST                 Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED       Month/Day/Year
TO U.S. CUSTODY ▶

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT     Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time:                    Before Judge:

Comments:

## ATTACHMENT TO PENALTY SHEETS
## U.S.

### v.

### EDWARD G. KLUJ, and
### GURINDER KIREN MAND,

**Count One**: 18 U.S.C. § 1349 - Conspiracy to Commit Health Care Fraud (Both)

    <u>Penalties</u>:     Up to ten years imprisonment;
                                 $250, 000 fine (or twice the gain/loss);
                                 At least two years but not more then three years supervised release;
                                 $100 Special Assessment

**Counts Two through Forty-One**: 18 U.S.C. § 1347 - Health Care Fraud
                                 (Counts 2-8 Both, Counts 9-41 -Kluj)

    <u>Penalties</u>:     Up to ten years imprisonment;
                                   $250, 000 fine (or twice the gain/loss);
                                 At least two years but not more then three years supervised release;
                                 $100 Special Assessment

**Counts Forty-Two through Forty Three**: 18 U.S.C. § 1518 - Obstruction of Criminal
                                 Investigation of HCF (Mand)

    <u>Penalties</u>:     Up to five years imprisonment;
                                   $250, 000 fine (or twice the gain/loss);
                                 At least two years but not more then three years supervised release;
                                 $100 Special Assessment